Good afternoon, ladies and gentlemen. Good to see you here. Judge Hawkins is not appearing with us today because he is unavailable, but he will listen to the argument by tape. And we are gathered here for the re-hearing on Bach in the case of Ellis v. Harrison. We'll go ahead and begin. Good afternoon, Your Honors, and may it please the Court, Patricia Young representing Appellant Ezzard Ellis. I'd like to reserve five minutes of my time for rebuttal. The record is clear that Ezzard Ellis, an African-American man, was represented at trial by Donald Ames, an avowed racist. Mr. Ames referred to Mr. Ellis with racial slurs and said that he exhibited stupidity typical of African-Americans. During the time that Mr. Ames represented Mr. Ellis, he also stated that because his client was black, he did not care what happened to him and did not trust him. Now, while this racism was unknown to Mr. Ellis at the time of trial, it was not a secret. The record demonstrates that a variety of people can attest to Mr. Ames' racist views and his regular use of racial invectives. Let me ask you this. Do you concede that Mr. Ellis' claim fails under the Strickland standard? If not, how has Ellis shown prejudice as defined by Strickland? Do we have to adopt the rule that you're putting forth, or can he prevail under Strickland? Your Honor, we that racial prejudice in the criminal justice system is especially pernicious and has applied a per se rule of reversal when confronted with racially biased actors in the criminal justice system. We are asking this court to follow suit and apply a per se prejudice rule that... So that would not require... So whatever happened in the courtroom would not be relevant? That is correct, Your Honor. We are asking this court to apply chronic to Mr. Ellis' Sixth Amendment claim. Well, what about... I'm just sort of thinking it through in terms of the rule that you're proposing. Certainly, Mr. Ames, the things that he said are terrible, and it appears that he wasn't a very nice person with his family. Should we then go into considering what type of people? If they're bad people otherwise, then should that be factored into whether someone... You can't be a good defense counsel if you're a bad person. Your Honor, if you're asking what type of rule on a broader scale are we asking to apply the same... Right, because Mr. Ames was a bad... His family hated him as well, and they said he was a really horrible person. And I'm not sure that if that is going to become part of the standard that there would be any counsel out there that you couldn't find something bad to say about as a human being. And that is not the rule we are advocating today. We are advocating that presumed prejudice should apply when defense counsel harbored racial animus against the defendant or the defendant's racial class. But counsel, how do you... As you know, Mr. Scheidegger for the amicus has expressed a concern that I think this rule could launch a tidal wave of claims so that anybody that gets convicted could claim that their lawyer was a racist. Here you have a situation where the daughter testified what had been said about Mr. Ellis. He didn't know about it. Apparently it didn't affect the trial. But how do we fashion a rule that you're advocating that would be workable in the real world? What should the burden of proof be? How can we address the very real question that you raised without turning the criminal justice system upside down? The rule that we propose would be the typical preponderance of the evidence standard that applies when a different standard doesn't apply on habeas. And that is that the defendant petitioner would be required to show by a preponderance of the evidence that his counsel harbored racial animus against him or other people of his racial class. Why do you need a rule that goes beyond him? In fact, I understand you'd like a broad rule because, by arguing your side, you'd like a broad rule too. But you have a case in which animus was apparently expressed against clients, not just against African-Americans as well. And apparently there's evidence against this client in particular. That might well lead to a conflict of interest. I'm not sure why Judge Smith's question is, do we need a broader rule than that? What if the rule is simply that when you say racially derogatory things about your own client while you're representing him, including during the time period, saying I don't care if my clients are convicted or not or something like that, that's enough to establish a conflict of interest. We can get to the second question next, what follows from it. But why do we need a rule broader than that? Your Honor, you don't need a rule broader than that. If this court wants to adopt a narrow rule that it must be exhibited towards the client, Mr. Ellis does satisfy that standard. To be frank, though, logically speaking, I'm not sure it makes sense to cabin that rule at that point. But if you don't cabin the rule, you get to Judge Smith's question, which is that we have attorneys general who have now appeared in blackface in their college yearbooks and et cetera to start drawing lines. This case strikes me as an easy line to draw with respect to whether Mr. Ames had a conflict. I'm not so sure it's so easy what follows from it. But it's an easy line to draw in this case. Why should we go drawing other lines? I agree, Your Honor. I do think it's an easier line to draw in this case. But if you did need another limiting principle, I'm not sure drawing the line at specific animus towards the defendant would be the place to draw it. I would suggest drawing it at during the relevant time period of representation. Fair enough. So if an attorney, as you had mentioned, exhibited blackface during high school, but then is never shown to exhibit any sort of racial animus, perhaps 20 years later, that would be a much harder case to prove. And that, luckily, is not the case. But again, I'm focusing on this client and the time of his representation. And that seems to me to provide the question. That's the question posed in this case. And it doesn't strike me as a very broad rule. The tough question, I think, is what follows from it. Does a presumption of prejudice follow from it? Or do we analyze it under what Meckin said we should do when nothing is raised at trial? We don't look for Strickland error, but we look for some adverse effect on the representation. I think the presumption of prejudice from Cronic should apply. And I'd like to point to— From Cronic, Cronic doesn't apply a presumption of prejudice. Cronic rules against the defendant. Your Honor, I'm saying that the three standards that we're dealing with in an ineffective assistance of counsel claim, right? There's Strickland's, where you have to show deficient performance and prejudice. There's Kyler v. Sullivan, where you need to show a conflict and some adverse effect on performance. And then, Kyler, where you're not required to show any prejudice. I'm saying that rather than applying Kyler v. Sullivan or Strickland v. Washington to this claim, we need to look at Supreme Court reasons for essentially treating an error as structural, which is what we're asking this Court to do by applying Cronic. And the Supreme Court has cited a number of reasons that justify treating an error as structural. Well, okay, but then if you're just a little bit prejudiced as opposed to just claiming prejudice like Mr. Ames, do then—or do we have to have hearings to decide that you weren't that prejudiced? You maybe made—you know, and there's a lot of political correctness that goes around. You could say something that I think is totally outlandish, and you don't mean it that way. I mean, two people could differ from that. So are we going to spend all our time, I think, as CJLF has said, you know, deciding how bad what someone said and completely untether it from the representation that people got? And that's why we do propose a rule being as harboring racial animus. And animus does have a definition of hostility. So that is where we think a workable rule would stand. Okay, but let's talk about some of the people that, as defense counsel, that you have to represent. Let's just say on, you know, that—I mean, that your client is not factually—let's say that your client's not factually innocent, and they've committed, you know, I think one area defense counsel struggle are child molest cases when they have young children. Or if you look at special circumstance murders, many of them are committed very heinously, and that's why it's a death penalty case as far as that goes. So do you have to like that person to zealously represent them? I mean, I would say I've never seen a defense counsel that has in their personal life committed the same behaviors as the people they defend, but I've seen many people very zealously defend people. So I'm finding that fuzzy there. I understand your point, Your Honor. And I think that what we are concerned about is really the racial aspect of this dislike. It's really not fair to compare racism to simply disliking a client for what he does or what he's accused of doing. Let's stick with race alone, then. We still have this issue. Even now, before we consider any rule here, virtually every capital case that we get, the lawyer, no matter how good, is accused of committing malpractice. There's always an IAC claim. They can be the best lawyer in the world. And because that's kind of an institutional sort of thing, people probably don't worry about it too much. But to call a lawyer a racist is a horrendous thing if they're not, or if the level is not so high. Or as my colleague pointed out, what about a black face in high school or something? I get your point about Mr. Ames. I don't have any question about that. And his daughter said he said all these things. So we could limit it to him if we needed to. But don't we have to have a really high standard, somebody that's not just on a single case, but maybe a proven record of racism shown in different ways in order to meet any kind of a new rule that you're considering? I don't think so, Your Honor. And the reason for that is even if we didn't have the history that we know Mr. Ames does have, if we didn't know that history from Mayfield or Wade and just presented the declarations that we were able to present in this case, we would still meet the rule that we're proposing today. It does not have to be that he exhibited this in every single case. However, it would be hard to imagine that he didn't exhibit this type of behavior in cases where he represented people of color. Well, but okay, but it wasn't like your client got convicted right away. It took five trials. I mean, a lot of people, I mean, there are cases where people don't do anything, and then they're convicted in a very short, you know, throughout history, we have some terrible cases where there was no preparation, there was no trial. Here, he had, what, two mistrials, two hung juries, and then he was finally convicted. Yes, Your Honor, and I really think that argument could be used to cut both ways. The fact that there were two hung juries shows that this was a winnable case. If Mr. Ames didn't harbor this racial animus that he did towards his client, would he have tried harder? Would he have tried all the cases, right? I do believe he tried cases two through four, I'm sorry, two through five. I think we do need to correct. The ER does show that there, another attorney was present at the first case, but that was just... Well, can you point to anything in the record? You said under Strickland, you can't. What can you point to where he punted that he didn't, that he didn't do his job? And that's the real problem here is that, first of all, ineffective assistance of counsel is not typically apparent on the trial record itself. We usually need counsel's files. We don't have them in this case. And so to say that we can simply point to adverse effect or deficient performance from the trial record itself is already a difficult beginning point. Would we revenge for a hearing, or what is your, what are you advocating for? I'd like to answer that two ways, if I may, Your Honor. The first is, if this court does apply the chronic rule, then we think there is enough in the record for relief at this point in time. The declarations have not been contested. If, however, this court is still unable to prove that Mr. Sullivan can apply to Mr. Ellis' claim, we would ask for a remand to be able to develop the adverse effect portion of this action. And what is it, what is it you're going to try to prove? So the four things that we have alleged in the briefing is that Mr. Ames failed to assert a fair cross-section claim, failure to raise Batson objections, failure to challenge obviously biased jurors, and failure to present testimony of a monetary settlement. Don't you, don't you have to link those to his bias? Yes, Your Honor, we do. And so, of those, it strikes me that the failure to raise Batson claims, when the only two African-American jurors were excused by the state from the panel, strikes me as something that might be worth exploring. But how do the others relate to his racial animus? It's not so much, so the failure to challenge obviously biased jurors, we would attempt to show that Mr. Ames did not challenge jurors that he should have, and that the decision to do that was not based on some sort of reasonable, strict objective. But this has already been considered by the California Court of Appeal. Yeah. No, not this specific claim, Your Honor, based on his racism. See, that's, that's, it doesn't have to be linked, that's the question. See, if you're just talking about not challenging the biased jurors, as Judge Bybee says, that's already been litigated. And it may or may not be an effective assistance, but it's not, that's not what's in front of us. Doesn't there have to be, it strikes me there's a causal link when you start talking about letting the state strike all the African-Americans and not objecting to it. But on the other ones, I can't see a causal link to the animus. Doesn't it have to be some, some link to the animus? Yes, it does, the adverse... To the conflict, as Kyla says. Yes, yes, Your Honor, it does. So how will you show the nexus? Is that what we're presuming? No, that, I'm sorry, this is strictly under, if this court wants to apply Collier v. Sullivan, we would ask for a remand to be able to establish that claim. But we are really pressing... So you would have to do two things, which is one, you'd have to come in and be able to show these problems, for example, the Batson problem, which have already been litigated and they were dealt with by the magistrate. And then you've got to be able to show a nexus. How are you going to be able to show the nexus at this point? That would be difficult to do, Your Honor, for that reason. That is one of the reasons that we are pushing the chronic standard in this case. Because again, it is difficult to show what effect it had on Mr. Ames' performance. Oftentimes when you're looking at, you're not looking at what did Mr. Ames do as a result of his racial animus, you're looking at what does he refrain from doing. And we're simply not able to show that. We don't know where he pulled his punches. Would he have engaged in plea bargaining for Mr. Ellis if Mr. Ellis had been white after having two hung juries? Would he have tried harder to shore up the holes in his case? And we simply don't know that. But how could you ever know that? That's the problem. I mean, it seems like you're asking for a per se rule, so you don't have to prove anything. I get your point, especially with respect to Mr. Ames. But you're really talking about putting a bomb under the whole criminal justice system to the degree you have a lawyer who has any alleged tint of racism. You're saying this is a structural error. No matter what happened in the trial, no matter what he or she did or didn't do, it doesn't matter because he's a racist or she's a racist, and they said this to their daughter, and therefore, my client gets a new trial. Isn't that what you're left with? Not necessarily, Your Honor. And I want to be very clear. We're not asking for any racially tinged comment to raise this presumption of prejudice. The defendant petitioner would still be required to prove the racial animus in order to get the presumption. Except, I mean, as a backdrop, and something that I think what we're talking about in the criminal justice system and any rules, I haven't heard one person mention Amerson, who's dead, and Martinez, who was critically wounded. And I'm not saying that's your responsibility, but the Attorney General chooses not to defend on those. And so, essentially, the rule you're asking for is if you can prove someone's a racist, and you don't have to in any way tie it to how they performed at the trial, or that, and I haven't heard anything in terms of, I think everyone cares a lot about factual innocence, and there's no ability for, you're not making any showing of factual innocence. So, essentially, you're conceding, you can't meet Strickland, you're not asking for factual innocence, and it's, the man's a racist, and therefore, everything that follows, even though without any link to what happened at the trial, or the strength of the evidence, or any injustice that would have occurred, he gets a pass. And, Your Honor, I'd really like to... I mean, I would hire a racist lawyer if that were the case, if I had a bad case against me, because then I would know I would always have an arrow in my quiver. And, Your Honor, I'd really like to unpack that. We generally give considerable deference to trial counsel's actions, and it is because of this considerable deference that a petitioner is required to show deficient performance or adverse effect. But that considerable deference is really premised on the fact that counsel is acting in the client's best interest. And when you have a record like the one we have here, where Mr. Ames obviously harbored racial animus against Mr. Ellis, we simply cannot start with the presumption that he acted in Mr. Ellis' best interest. And if we're not presuming that he acted in Mr. Ellis' best interest, then his actions at trial should not be accorded considerable deference. And that's a reason to really dispel with the idea that we have to show deficient performance or adverse effect. Instead of coming at it on the other side to overcome this presumption of deference, we're saying that presumption of deference should never have applied because of the racial animus. I was just sort of looking at the whole thing, too, that, I mean, he's just... You know, the things that are said, I'm not dissenting them in any sort of way. I want to make that Why did he hire an African-American person to work for him? I mean, that, you know, it's sort of like you have... So then, if deciding whether someone was a racist, then would you go back and look at and say, oh, well, he actually, yeah, he did say his African-American secretary was stupid or this, that, or the other, but he hired her. And, you know, so it's apparently, and, you know, his kids are, I mean, he's just a horrible, you know, no one's going to disagree. He's like, seems to be a bad person. Yes, Your Honor. And the fact that he hired African-Americans does not indicate that he respected them or did not think that they were inferior to him, much like, to be perfectly honest, slave owners had slaves, African-American slaves working for them. And that did not mean that they didn't believe that such people were inferior to them. And so, again, the burden would be on the petitioner to show that counsel harbored this racial animus at the relevant time period. And I really want to just remind the court that the idea that Mr. Ellis was entitled to the effective assistance of counsel is not important simply because it guarantees Mr. Ellis a fair trial, but it really serves the greater purpose of promoting confidence, the public's confidence, and the fairness and the integrity of the system. And here, when you've injected racial discrimination into that system, into a key player in that system, who is meant to protect all other trial rights, then we no longer have the confidence that we need to have in that system. And it thereby undermines the structural integrity, which is one of the reasons the Supreme Court applies structural error. Thank you, counsel. Thank you. We'll hear from the State. Good afternoon, and may it please the Court. Michael Mongin on behalf of the State Respondent. When a criminal defense attorney harbors extreme animus towards the defendant's racial group, it creates a great likelihood that the attorney will perform ineffectively, but in ways that are not likely to be apparent on the cold record. Under such circumstances, the Court should apply a rule of per se prejudice under the chronic framework, and to allow this Court to reach this important question and to adopt such a rule, the State is waiving the Teague bar, exhaustion, and any other procedural defenses with respect to the Sixth Amendment. Can the State waive the Teague bar? Yes, Your Honor. Is there any case law that backs that up? Your Honor, the Supreme Court made that clear in Danforth against Minnesota. It said that the State may explicitly waive the Teague bar. Of course, it's an unusual scenario, but we believe that this is an unusual case. It presents the en banc court an opportunity to clarify this Court's law and to adopt what we believe is a critical rule for the administration of justice. Why doesn't the State just employ its own tools of self-help? Why is it asking this Court to come in and overrule prior en banc precedent and not simply taking care of its own business? Your Honor, we believe that it is important for this Court in this posture to clarify the law that applies. Why isn't it more important for the California Attorney General to go back to the California courts and ask for the California courts to adopt this rule? Waive whatever Teague rules you have in state court and take whatever remedies California's got. If you think that this man has been unfairly prosecuted here because he had a biased lawyer, why isn't the State cleaning its own house instead of coming to us? I understand the concern, Your Honor. We were in the position of responding to a decision of this Court with a three-judge concurrence suggesting... All right. At some point, did you defend the conviction? Yes, Your Honor. All right. Do you believe that... Is it your position that Mr. Ellis can show factual innocence? No, Your Honor. We don't have... We have not taken that position, and we agree... Is it your position that if Strickland applies, can he meet that burden? No, we don't believe that on this record he can meet the Strickland or even the less demanding Sullivan standard, and I think that that is one... That leads to the problem, it seems to me. We have something here. There's still a case or controversy, I guess, but it's kind of strange. You and the defendant both agree that he should be... His conviction should be overturned, do you not? Yes, we do, under the... And you have every ability to walk over to the counsel table and extend your hand to his counsel and say, we hereby so agree. But instead of doing that, you're saying to us, even though we agree and we have no controversy between us on this, we would like you to adopt a rule that involves some difficult questions. You may be right, that may be the correct rule. It is a little strange, isn't it? Why can't you guys just go work this out? Well, Your Honor, two points, and I do want to address why we believe there is a workable rule here. But one point is we do believe that the importance and significance of this case extends beyond the particular... Well, it may well, and if it does, we will have another case in which to do it in, which the state is less charitable. It may not be the state of California than you are, and we can confront the issue and decide it. But in this case, you both seem to agree that this defendant's conviction should be overturned. And I guess I get back to Judge Bybee's question. You don't need us for that. Well, Your Honor, I understand, and I understand the point about the state court system. No, I'm not even the state court. This is a civil habeas case. You can stipulate the judgment against the state. What you're asking us to do in a case in which, that's why we had to import an opponent, you're asking us to do in a case in which you have no disagreement about how it should turn out, to write what will be an advisory opinion for future cases because, and I think you're correct on this, our prior case law is wrong. But that's a strange thing to be coming to a court to do, isn't it? It is certainly an unusual posture, Your Honor. I appreciate that. But we do think that there is a paramount interest, particularly on this issue, on clarifying the law and adopting a rule for going forward purposes. Does that mean you're not open to mediation? Does that mean you're not open to mediation, that you will not settle this case? Your Honor, our preference would be, as we indicated in our response to the en banc petition, to have a clear rule of... I understand that's your preference. So you are telling us that you're not willing to enter into any kind of settlement? No, Your Honor. Our priority in this case goes beyond the circumstances of this case, and we think it's important for this court to adopt such a rule. And I'm not as sure that we can unilaterally settle a case in this posture. Excuse me. Let me ask a question just to follow up. A couple questions, actually. First, do you think this case is sui generis? I mean, do you think what we're really doing here is establishing an aims rule? Your Honor, I would hope that it is, but I fear that perhaps it may not be. And I think that we have learned in recent years that sometimes there is a shocking amount of racism. We would hope that it would apply in only very narrow circumstances. I'm certainly not aware of criminal defense attorneys practicing in this state who have a record like Mr. Ames, but there may well be. All right. So let's get... Okay. My second question along the lines of Bybee and Hurwitz is, you're not really opposing this petition. Your Honor, we are asking the court to adopt a legal rule that, yes, would lead to the conclusion that... But you're not opposing the... You're no longer opposing the petition. I don't know whether this case is even deficible any longer. I mean, I realize we... You know, it was all suggested. Wouldn't it be nice to get someone else to argue it? But suppose we come out with a really broad rule, like any racial comment, and it's structural error. You're not going to seek cert petition. You're not going to seek Supreme Court review, are you? Your Honor, I would want to reserve that point until I... Would you come back? I mean, would you... Well, can you do that? I mean, how could you say we're not going to oppose it, and we're going to argue the same side? And then we come back, we do something that you don't precisely like. Aren't you now judicially stopped from going before the Supreme Court? We may be, Your Honor. I just want to be careful about... You haven't really thought about that, have you? How would you craft the rule? Your Honor, we do think that it's important to have a workable rule, and it needs to be a strong showing of extreme racial animus. And what that means to us is that the attorney harbored a strongly held belief that members of the defendant's race are inherently inferior. There would need to be some objective manifestation of such a belief, whether it's statements of the type that we have here, writings, or perhaps documented membership in a hate group. Does that belief have to extend to the particular client, or can it be exhibited towards members of that racial group alone? We don't believe that there should be a requirement of evidence showing a statement specific to the client. Now, of course, the premise of this rule is our belief that when there is a strongly held racial animus towards the client in a particular representation, that is very likely to lead to deficient performance. That can be hard to tell, but... But you're opening Pandora's box, aren't you? I mean, if you're saying somebody has racial animus, needs to be a strong showing, but you have no showing of prejudice toward the particular client, it's just a guessing game. Now, in this case, we have... It's very clear, very clear what the daughter's testimony is. But on a general basis, I'm almost kind of shocked that the state would advocate something that has the potential to really upset our justice system. It's so difficult to prove something as insidious as racial animus. Now, in this case, it's done. It's just done. But I don't know what we do with what you're talking about. It sounds like you're just saying, boy, somebody's racially prejudiced. We don't want those kind of people in the state. Well, great, but how do you implement that? Well, Your Honor, we do think that there needs to be a strong showing here, not just a racially-tinged comment. There needs to be indications that this person strongly believed that people of the defendant's race are inferior. And I think courts would look to a range of circumstances, as they would in asking whether a juror or a judge harbored racial bias. But they could look to, for example, the number and frequency of the statements, whether they were patently racist, whether they were expressed unabashedly and openly, whether they were here with reference to participants in our legal system, to clients, to court personnel, to other officers of the court. I'm not confused, but I want to hear your answer about this, because that would be a nice way of saying I'm confused, and then lay you down the track. Who do you represent? My understanding always was, as a prosecutor, you represent the people of the state of California, which includes the defendant or the petitioner, but it also includes, in this case, Mr. Amerson and Mr. Martinez. And when you are a prosecutor and you are prosecuting someone, if you see deficient performance, you shouldn't obtain a conviction against someone under circumstances that are not appropriate. You have a broader duty than just, say, defense counsel does. I haven't heard, I'm just wondering how, if you are a victim of a crime and you're convicted, and you have the DA's office, I think in San Bernardino also coming up, is the attorney general not going to ever represent those people as part of the process? Or say, let's say you don't believe in the death penalty, but the people of the state of California have passed the death penalty. If it's a capital case, if you don't believe in the death penalty, then you don't have to represent those cases. I'm sort of, I feel like you're picking and choosing here. That what I saw prosecutors as having a broader duty. Your Honor, the attorney general's office does, in a formal sense, we represent the state respondent, the warden. We represent the state and the people. We represent the interests of the state. I do not at all want to minimize the challenges that any rule that results in the reversal of a long-standing conviction poses to victims, but we believe... And if you're not factually innocent, and you can't tether in any way a person's racism to what happened at the trial, still you feel that you want a rule that it's structural error, if you can prove someone's a racist. We believe that on the strong showing that we would look for, that this is a rule that would serve the interests of justice in ensuring that there are fair trials, and beyond that, in making a clear statement that our judicial system appreciates and does not tolerate the insidious effects of racial discrimination of this sort. Let's assume you get an opinion that affirms the denial of habeas. Let's assume En Bancourt doesn't agree with you. Do you leave this defendant in jail? You've just told me that you think that this is an outrage. So, are we really deciding a case for controversy here, or are we just trying to design a rule that you like? Your Honor, I'm reluctant to take a position on what we would do... Well, you've just taken it. I can't imagine. The Attorney General of State of California who's now saying this is essential to the integrity of the judicial system, if the poor benighted Ninth Circuit comes out the wrong way, keeping the person in jail. Are you really going to do that? Your Honor, there may be opportunities in the state system to pursue relief for these individuals. We think it's important as a matter of federal constitutional law for this court and the state courts, when the issue comes before them, to adopt an appropriate rule that appreciates the harmful effects that this type of extreme discriminatory animus can have on an attorney's representation of a client of the race that he abhors. But you have no way of going into the California system and getting California courts to adopt the rule that you are asking us to adopt for them. Your Honor, in the typical case, of course, state courts are the central forum, and these claims are and should be typically raised in the state court in the first instance. This is a very unique situation where... Do you have any recourse to the California state courts at this point? I'm not sure that we unilaterally have recourse to the California state courts. Individuals who are imprisoned in California can file successive habeas petitions... No, you're the Attorney General. You represent the Attorney General of California. Do you not have any relationship with the courts that you can get this rule adopted in California courts without having to come to the federal courts and impose it on California? I understand your concern, Your Honor, and we do have a relationship with the state courts. We also believe that it is important to have clear law in this circuit, which does affect our cases as well. Do you know whether there are other cases handled by this lawyer winding its way through the state courts that are being reexamined at this point? There are at least two that we're aware of. Those are the cases of Mr. Wade and Mr. Mayfield that were previously litigated by this court, who were represented at the guilt stage by Mr. Ames, and those are African American defendants. And to the extent that the rule that we are proposing is the appropriate constitutional rule, then those individuals would presumably have suffered a Sixth Amendment violation as well. And Mr. Monk, if you could just finish up how you were asked to craft a rule, and I think you said, you know, in a case where there's extreme racial animus or objective manifestation of that, as I take it you agree with Doug here, finish it. What would happen? How would you, if you're writing the disposition, how would it end? Right. So I think that the question would be whether there is an objective manifestation of that type of extreme racial animus. And ultimately, the question is whether this falls within the chronic framework. And what chronic says is that a third category of cases where its rule of per se prejudice would apply are cases where the circumstances create a likelihood that any attorney, even a competent one, would not have performed effectively. And I think that is what then the next step would presumably be an evidentiary hearing. In the typical case, that would be in the state courts in the first instance, which are where state habeas petitions are brought. This case is a rare one where the NOVO review is appropriate, and there could be an evidentiary hearing in federal court. And what would happen at the evidentiary hearing in federal court in this case? Well, Your Honor, we don't have any reason, and I'm not sure anyone in this to doubt the veracity of the declarations, the statements allegedly made by Mr. Ames. And so I think principally, if there were an evidentiary hearing, that would be an opportunity for the district court or the magistrate to hear from the declarant and for them to expand on these statements. At what point did you change your position to agreeing with the petitioner? And how long in this process did you take the position that habeas should be denied? Your Honor, after the panel decision and the three judge concurrence and the petition for rehearing en banc, we were ordered to respond to that petition, and that gave us an option. Okay, but all those terrible things about Mr. Ames were available, and you were asking courts to deny relief. So how did you, what was the epiphany? How did you look at yourself in the that position? I understand that, Your Honor, that there were a confluence of events, and the petition for rehearing en banc and the order for us to respond caused us to take a fresh look at the legal landscape and at the facts in this case and to consider the panel opinion. But if it's what you say it is, why wouldn't that be apparent to a prosecutor? And why aren't you chastising that prosecutor for allowing that to go on? Well, Your Honor, I think that this is an area where the law has evolved and continues to evolve, and we've seen recent statements from the Supreme Court, including in the Pena-Rodriguez case, expressing a renewed commitment to not allowing this type of insidious discrimination to infect our criminal justice system. And as to the point about the prosecutor not allowing this to go on, I certainly would hope that officers of the court, if they are aware of this type of racism, would take action. But you're not, I'm not saying you personally or whatever, but whoever was representing the state was aware of what Mr. Ames had said to his family, to other people, and still urged to a court to deny habeas. Am I wrong? That is correct, Your Honor. Okay, so if prosecutors are aware of this, why, you know, I'm just calling you out on Your Honor, I think that this case has evolved somewhat, and at the earlier stages of the case, the only claims that were raised before the state court were, and the federal courts in the early going, were under Strickland and under Sullivan. And we continue to believe that on this record, there is not a viable claim under either of those frameworks. And if I might, I know I'm way over my time, but if I could just make one point on that, I think there were a lot of questions about, you know, the hung juries, and there's no evidence of prejudice here. We agree with that. And I think that in some respects, this is a particularly good test case for the type of rule that we are proposing, because the premise of our rule is not that there is prejudice or deficient performance apparent on the record. It's that when you have this type of deeply held discriminatory animus against the defendant's racial group, it is very likely to manifest in deficient performance. It's very unlikely to be visible on the record. And Strickland helps make this point. Well, if someone told one bad joke that was inappropriate, a politically incorrect joke, is that, does that satisfy? Or do we have hearings on all of those? Mr. Ames is here, and some perfect person that's never said anything wrong in any circumstances here, and then there's people that have said inappropriate things along the way. So the courts will need to decide if it's that bad. Your Honor, we agree with Judge Wynn in the concurrence that a single fleeting comment would not be sufficient. And I also will grant you that there are going to be very difficult cases at the margins of this rule, as there are with other rules related to race discrimination in the law. But we don't view that as a reason not to adopt this rule. But counsel, at the end of the day, from what you've heard here, you've known about the facts for a long time. This man was prosecuted. He's still in jail. You've had a change of heart about the law, but this is an AEDPA case. The Supreme Court hasn't said this. You've asked us to create a rule, even though we're under AEDPA, that does something along the lines that you're talking about. You and the petitioner seem to be completely of one mind. It's been asked, where's the case or controversy? Is this an advisory opinion, if we do give you what you're looking for? It's a terrible case, but it's also a very troubling case procedurally and actually, because it seems like it's a little contrived. It's kind of like McCulloch versus Maryland, which we all know about. Well, Your Honor, I think in response to the en banc petition, we took a hard look at this and have offered what we believe to be the best and most responsible legal rule. And that rule then would be adopted by this court. It could be adopted in the en banc posture and applied to the particular facts of this case. I do want to respond on the 2254 D1 point. I think as to the chronic claim that we believe is the proper basis for the rule here, I don't think D1 applies because that claim was not exhausted in the state courts. It hasn't been adjudicated on the merits in the state courts and we have waived exhaustion. So I think D1 would not apply for that reason with respect to the chronic claim. One question. The panel felt bound by Mayfield. What's wrong with just saying to the extent that Mayfield conflicts with Frazier, even though Frazier's not an ad hoc case, it's overruled. I'll leave it at that. The court could do that and that would leave Frazier on the books. I'm not sure that that would serve the interests that we have identified in terms of clarifying the law, in part because the facts of Frazier are so unique and I think likely to be very different from the typical case where this issue presents itself. I think you can discern in Frazier a general concern about just racially discriminatory animus on the part of a defense attorney, but there's also a lot of work being done in that opinion by the overt threat to the defendant and the racial epithet communicated to the defendant, which are facts we don't have and I think they're not likely to recur in a whole host of cases or scenarios that we think are deeply problematic under the Sixth Amendment. I'm not sure you've answered. I know you've answered it, but I'm not sure you've answered it completely. Let's assume that, as the Chief Judge says, we issue an in-bank opinion saying Mayfield was wrong. This kind of circumstance presents a Will you then stipulate to the rest? Well, I think it's a yes or no. Just want to make sure that I understand the question. The three-judge panel said, we got a rule against Mr. Ellis because Mayfield covers this case. Everybody's made a good argument about when Mayfield was incorrectly decided. Chief Judge says we say so. I'll promote him. In a minute. In a New York minute. So we say Mayfield was wrong, we decided. You weren't bound by a three-judge panel. And so send this one back to the district court. Don't you stipulate to the rest under that circumstance? You have to. Your Honor, I'm sure... Everything you've told us today says you believe that. What you'd like us is for us to instruct you and hold your hand all the way through the process so that at the end of it, you can say it wasn't my fault, it was the Ninth Circuit's. I'm asking a real-world question, and that's the question he's asking. Your Honor, the reason that I'm hesitating is I'm trying to play this out in my mind. And I think in that scenario, if the Enbar Court could say that we reverse Mayfield to the extent that it says otherwise, and then circuit precedent would be the Frazier case. And then we won't say what about it. Poof, it's gone. Now, what do you do in this case when we say that? Okay, I am following, and I understand. I believe that what we would do is go back to the district court and take the position that we have taken here about what the appropriate rule should be in a... But I guarantee you, if you show up in front of a district judge and say, our position is that you should let this guy go because you should presume prejudice, the district judge will say, thank you very much, we've had a wonderful time. I'm not going to have to do anything because the state's position is that we should presume prejudice. And so, is that where we are? That would be the position that we would take in this case. The district court would say, file the stipulation in a proposed order. Well, that is the litigating position of the state respondent in this case, that that is the appropriate rule. So then all you need for us to do then is overrule Mayfield. Your Honor... And that's all that this... That's all Mr. Ellis needs either. Where's the case for controversy? Well, Your Honor, that may be, and if that's what the court... No, we're just asking your position on that because that's the narrowest way we could approach reversal. Let's just say Mayfield is gone and either send it back to the three-judge panel or say, now you go back to district court and prejudice, you apply Frazier. Right. I understand. Okay. Thank you. Thank you. Our questions took you over time. Kent Shatiger for the Appointed Amicus Criminal Justice Legal Foundation. And thanks for your pro bono representation. Thank you, Your Honor. I'd like to take a step back from the deplorable, Mr. Ames, and consider the implications of allowing claims like this. We really want a regime where we put lawyers on trial for having wrong thoughts or saying wrong things in private conversations without any showing that it had an effect on the actual case. Well, we're not talking about a situation where somebody may have made an error in college by participating blackface at a party or made some stray comment, right? We're talking about a lawyer who, during the period of representing African Americans, repeatedly used racial slurs against them, believed in the inherent inferiority of African Americans, said he didn't care what happened to them, said that his clients who were convicted deserved to fry. We have an extreme case here. We have a record of an extreme case. Doesn't the record in this case totally undermine any confidence in the lawyer's representation? And in the question of whether the lawyer really fulfilled his duty of loyalty to his clients? Well, some of the things that were said actually reflect the particular cases. The client that he said deserved to fry used the word fry as unprofessional, but to say that that particular client deserved the death penalty is an entirely reasonable position. Just because that person was Hispanic? No, because that person committed horrible crimes. But it was linked to the fact that the ethnicity of the defendant, I've thought, in that case. I think that linkage is not entirely clear. And remember, we're dealing with a hearsay statement, so I think that linkage is not... Well, is there any indication that he said those things to a jury? A jury? Well, right. Obviously, if someone got up and said, my client needs to fry, in the closing statement, I think we can all agree that that was a drop kick and it's over. That would be an abandonment of the client. That would be... But if you can answer my question, does a record like this undermine our confidence in the attorney's ability to adequately represent his client? I don't think it does. Would you want him representing you if you were African-American? I wouldn't want this lawyer representing me under any circumstances. But why don't we get to Frazier and the duty of loyalty? I mean, Frazier is founded on the idea that the attorney has a duty of loyalty to the client. And once you breach it, if there's a conflict, then reversal is required. And you agree with that? That gets into the chronic. I mean, strictly into the general rule. And then there are several exceptions, one of which is the chronic exception, which is for things like complete denial of counsel, a complete breakdown in the adversary system, which is what Frazier is. And you asked earlier, should we overrule Mayfield if the Senate conflicts with Frazier? Well, it doesn't conflict with Frazier. I know that's your position, but I mean, you think Frazier is good law. And to the extent that Mayfield suggests otherwise, you disagree with that. And a statement from us clarifying that it doesn't would just be fine with you, right? I disagree that Mayfield does conflict with it, but a statement to that effect is not a problem. So what if at the point of and the defendant objected, if the district court or the trial court appointed this gentleman, we would have structural error, would we not? I don't know that we would have structural error. You mean that we would then go look at before the trial, he said, Mr. Ames, what do you think about African-Americans? And he said everything that he said here. And the defendant said, Your Honor, please don't appoint a lawyer. That would probably actually poison the attorney client relationship. Maybe not, because you don't think it does. It doesn't do it sub silentio. The fact that he knows about it may not make a difference. One of the nice things about the robe is I get to make up the hypotheticals. So, you know, all this before he's appointed and the defendant objects. We would not look for error in the record thereafter to see whether Mr. Ames did a good job, would we? Under the existing structure of the law, I don't think that would be a cause for reversal by itself. You don't think it's you don't think a judge in the state of California in providing effective counsel serves that by providing a defendant with an African-American defendant with somebody who says these things? The difficulty here, of course, is that no objection was made at the time and we're trying to deal with it later. But surely you can't think that it's OK for somebody like this to represent someone. It would be a very, very bad decision on the part of the trial judge. There's no question of that. It would be a reversible error. Whether it amounts to a violation of the Sixth Amendment is actually a more difficult question. It seems to me it would fall within the easily fall in the chronic category, as Justice Scalia describes in Meckens, when an objection is made at the time and there's a conflict and the district and the trial judge ignores you, then we have we have structural error. The conflict cases under Sullivan are different from the complete breakdown of the adversary system cases under chronic. I understand, but it seems to me that when the objection is at the time, again, I don't know why you're defending this one. So my question is why does it change because he didn't know at the time? See, I thought this was an easy question because you were going to say yes to the first part and then we get to the hard part, which is why does it change because he didn't know at the time? Well, there is a big difference. Assume that your answer to the first question is the way I expected. How does it make a difference if the client is aware of this and it poisons the relationship? And that's part of what Frazier, I mean, when you say it poisons the relationship, it poisons it from the client's perspective, correct? Yes. Isn't the relationship already poisoned from the lawyer's perspective because of his racial bias? The nature of prejudice is not, it varies. And an awful lot of people who hold prejudiced attitudes can nonetheless put their personal feelings aside and represent a they do not have a high regard for. Well, sure, because there are variations, right? But can racism be so extreme that it rises to the level of structural error in your view? Can you imagine any situation or circumstance at all where it's just beyond the pale? Or is it your position that it really doesn't matter what the lawyer says or expresses himself or the name calling or the belief in the inferiority of a particular race, tethering it to defendants, not caring what happened to them? It could be just the most extreme scenario possible. And even that still wouldn't be. The most extreme scenario possible would be that he hates whatever group it is so severely that he wants to see them convicted regardless of whether they're innocent or guilty. So in that situation, it would be chronic error? That would be chronic error, yes. So my understanding of the brief that you offered is that if you put it off over here, that Mr. Ames is dead, right? So Mr. Ames can't tell us what his strategic decisions were or anything like that. Or what the nexus is. But you're saying if someone is a bad person and it's over here, then the things that you look to is, okay, did the petitioner or defendant know about it? And how did that affect that, you know, did it cause a breakdown in the relationship with here? That's not present. He didn't know about it. But then otherwise, that you're saying that the particular framework that we have is sufficiently functional to handle the person that in your view, the racist that tanked the case that did not represent someone or, you know, that that could be chronic error. Or there are situations where a person has a conflict of interest, which this is there, it doesn't really fall neatly between those. And then you've got Strickland where you've got to tie something to whether the strength of the evidence whether it prejudiced the results, you know, and you got to show some error, right? Right. And so your position here is we have all this over here, we have a bad person, and your brief did not defend the comments that he made or say that's a good person. Or I think you did say if you're a bad person in your personal life, that really doesn't tie to that defendant. The problem is the creation of a rule that would reverse criminal convictions without any showing that whatever the issue was had any effect. And that will be permitted under chronic in cases so extreme as to make it extremely remote possibility that the person ever could get a fair trial. And this isn't one of those extremes. I don't believe this is that extreme. Now. I, I've never known anybody so extreme that would qualify for that. No, but the problem is, you know, under Strickland, for example, we, we defer to trial counsel's strategic judgments. But once there is either a conflict or you have a racial prejudice severe, we can't defer really to those strategic judgments because they are tinged. It's, it's a, it's all those thousands of decisions that you make during a trial are now suspect because there's no relationship, no loyalty to the client. Isn't that, isn't that the essence of the rule we're looking at? What's been established here, but how can you deliberately tank the case? No, there's a difference between deliberately tanking and just saying, well, I'm not going to try very hard on this one. I'm just going to let, I'm not going to, I'm not going to put on all the defense that I could have. And a lot of those aren't apparent on a record. That's the, that's a tricky part of these cases. It wouldn't be apparent on the record, although the, the actual decisions would be. Not necessarily. Well, we know what he did. I mean, this happens all the time in ineffective assistance cases. We know what the lawyer did. And we have other lawyers coming in saying he should have done this. I would have done this. The evidence pointed this way. Those kinds of arguments are made all the time in an effective assistance cases. But there are, there are some strategic decisions that are invisible. There are some, but regardless of what he thinks of the client, everybody wants to win. I mean, lawyers want to win. They want to win the case. They don't want to be known as losers. What, what is your position about the interesting juxtaposition between the petitioner and the state of California? As several of us have, you have a situation where you don't have any adversary here, really. I mean, you as amicus you are, but you got the representatives of Mr. Ellis. You've got the state of California that are basically saying, hey, we're all for this guy. We're not opposed to anything. We think you ought to be freed. Whatever needs to happen to have that happen. That's cool. But we want you to make a new rule and we want it to be in a certain fashion. You comment first on, do we have a case of controversy? Is he asking for an advisory opinion? Will you address that first, please? Well, I think, I think you do have a case of conviction. You have a district court opinion or district court decision rejecting a habeas corpus opinion, and you have the appeal from that decision seeking to overturn it. And when it's the person challenging the lower court decision, at least in the standing cases, that presents a much lesser problem than you have. But counsel, I'm over here. As I asked earlier, they're not really opposing the grant of the habeas petition. Not anymore. They're really not. So, and I am very concerned about the point you raised earlier, Your Honor, about if this court did come down with a broad rule, there's nobody to petition for certiorari. Right. That's, that's a huge concern. Well, I will. Right. So, so I mean, that would behoove if we do come down that way to make a narrow rule, but that's my, that was my second question that I asked. Is this really the Ames rule? I asked if there were other cases. So narrow that only applies to this one rule, right? Well, we asked if there were other cases, and both of the other cases that the DAG cited involved Ames. Well, I certainly hope that there are very few, if any, other lawyers this bad. But you still have to decide the case, and you still have to craft a rule. The fact that they're, everyone here is saying like, okay, he's bad. Okay, we're, but that being said, then we've come up with other hypotheticals. So what if someone were blackface in high school, or what if, and everyone seems to say, oh, no, no, that would never satisfy. Or what if someone told a political, oh, no, no, no, that would never satisfy. But the rule that's being asked for, that would still have to be litigated, right? And it's not just what cases would satisfy the rule you create, it's what cases would create enough of a case to require litigation under the rule you create. So what would rule, how would you, if we were to draft a rule, how would you draft? Well, I would craft a rule saying simply that you this claim under the existing structure, and he would have to, he doesn't qualify for the chronic rule, because the chronic rule requires things like a complete breakdown in the adversary process. He doesn't qualify for the Sullivan rule, because this isn't really a conflict of interest. The Supreme Court in Mickens v. Taylor was very disparaging of those cases that have taken a view of what is a conflict and said that Sullivan is for cases of actual representing two different clients with conflicting interests. So I don't think it comes under the Sullivan rule either. So you, do you think Mayfield was correctly decided? Mayfield was correctly decided, yes. So you wouldn't have us overrule Mayfield? There's no need to overrule Mayfield. Even in a case like Mayfield, where there were objective criteria showing that counsel's performance may have fallen below the first prong of the Strickland standard. Well, the holding of the relevant portion of Mayfield is that he hadn't shown any connection. Right. And therefore had no claim. Right, so I'm... That's correct. That's the, but I'm asking the question, let's assume that you've got somebody who did what Mr. Ames did in Mayfield. Would that meet the first half of the Strickland prong in your view? Um, you mean as far as his representation in Mayfield? He did, he did a bunch, he didn't, didn't cross-examine some people, he didn't put any evidence in the mitigation stage. Yeah, I really haven't gone into the whole gamut of things he did in Mayfield. The problem is, then we're comparing a lawyer with internal motivations, saying the kinds of things this guy does, to your normal mediocre lawyer, and we're saying they're exactly the same. Isn't there something different about a lawyer with these motivations, as opposed to your average lawyer who makes strategic decisions, as the chief says, perhaps badly, but makes them along the way? Well, yes, there is. But in, for example, the United States versus Keyes case cited in my brief, we had a lawyer who was actually afraid of the client. That's an internal motivation too. And how far are we going to go on internal motivations, as opposed to just looking objectively at the representation provided? So it's only in the circumstance that Judge Wynn proposed that you would think there was any relief for the defendant who got Mr. Ames as a lawyer? On a case like this, I think it would take, yeah, my answer to that question, I think is what it would take. Does EDSA have any role in the limits of our ability to craft a rule, if we were in line to do that? Yes, I believe it does. I mean... In what way? The ineffective assistance of counsel claim, premised on the racial bias, was in fact litigated in California courts. And it was decided, although the Superior Court judge made a long statement about the burden of proof, it's not a reasonable look-through to think that the California Supreme Court accepted that when they do strickland claims every day, and they know very well what the burden of proof is under strickland. And Wilson v. Sider case says, don't be that mechanical. Generally, you look through, but if it's not reasonable to think that the higher court actually accepted what the lower court said, then an error in the lower court isn't assumed to have been duplicated by the summary judgments above. So the Attorney General wants to parse the ineffective assistance claim more finely and say, well, he only litigated this kind of claim as opposed to this kind of claim. But they're the same claim. They're based on the same underlying facts. They got the same basic gripe against the lawyer. And that case was decided by the California Supreme Court and rejected on the merits.  I believe it should be the end of the story, yes. It is basically a modified rule of collateral estoppel. And if the case was previously resolved on the merits and the exception does not apply, which I don't think it does, it's the end of the case. Oh, if we were to craft a rule along the lines that the state and the petitioner have requested, arguably, I mean, we don't care right here whether the Supreme Court reverses this, of course, but they would have an automatic reason for doing that from your perspective because AEDPA says this case is over. What's been litigated has been litigated. There's no basis under the law that we have decided, I mean, the Supreme Court would allow this to be reexamined. Is that your position? Counsel, I'm curious. This might be a better question for Mr. Mongan, but since you're here and he's not, here's my question. Could this court issue an order stating the following? We understand that the state of California has changed its position during this litigation and that now, I know Mr. Mongan didn't quite answer Judge Hurwitz's question, but I'm willing to say, and now no longer opposes the writ in this case, we remand this case to the district court and order it to issue the writ and just be done with this case. I don't know of any authority to vacate a lower court decision based on a party's change of position alone. If they now, with the state of California, could clarify in a 28-J later that they no longer oppose the writ and in fact, are in favor of granting it, which maybe that would help. Let's assume that happens. What would prevent us from sending to the district court saying, look, when the district court had the case, the party thought it was this. They've now changed. We're sending it back to district court with instructions to grant. Well, I hadn't focused on that question in my preparation because that's not what I was asked to brief, but- I didn't think of it until hearing the argument today. I don't know of any authority to do that. I know that the Supreme Court regularly does what this court did and asks somebody else to brief the case and then goes ahead and decides it. It's not normally their practice to just vacate a lower court decision. But you would agree that had the state taken the position it's possibly taking now before the district court, we would not be here? Yes, if they weren't opposing the writ in the district court, we wouldn't be here. Well, can they though, like for example, I guess what I'm saying is let's just say that, and I know that you litigate these issues because I know you were involved with Prop 66 and you're dealing with the Attorney General on a regular basis, but let's just decide that, you know, I mean, we have a lot of death penalty cases here and they decide, well, we're just not going to oppose any habeas petitions on the death penalty. Can they just do that and then they're automatically granted? I don't know the answer to that question. I think it would be very odd to do that and I don't really know if they have the authority to do that. I don't know what's odder than the situation we're in now. I mean, which is a pretty odd situation. Certainly, Your Honor. Well, those are my questions about, I mean, because obviously there's an amicus brief from the prosecutors and, you know, and I mean, we all read the news and there's a case in Sacramento where the prosecutors are seeking the death penalty and then you have the governor doing reprieves and if the Attorney General doesn't want to defend, you know, if that's not their position, how does this all relate? I mean, there's separation of powers issues and I'm just wondering, I look here, if you're a victim, who represents Mr. Amerson and Mr. Martinez? Unlike the federal government, California does not have a unitary executive. It has all these separately elected executive officers and some of them represent the people at some times and some represent the people at other times, even within the same case. And the question would really be more of a standing question, doesn't that have the U.S. Supreme Court role, who had standing to represent the State of California's interest? Yeah, if the State of California has the standing, then the question would be who represents the State of California. And who could, who is, who is entitled to? Would it be a political party? Would it be the Victims' Council? That is a huge question. Yeah, I don't think the Victims' Council, and I do represent victims sometimes, I don't think the Victims' Council can actually come in and intervene in a criminal case or intervene in a habeas corpus case. Well, I mean, prosecutors all the time can choose, like you could be allegedly a victim to a crime, but they could choose not to prosecute them because they don't feel that they have sufficient evidence in the process and the victim, alleged victim doesn't get to make that determination. That's correct. But in a situation where a person's been convicted and there, it's been gone through a lot of places, I'm just wondering, is, you know, can, if, if it's just because the Attorney General wants a new rule. Yeah, I mean. Then do they just get to decide whether, I mean, is it strategic here not to do this because then there could be no petition for cert? I always look behind people's, you know, I always look behind what's really going on besides what is going on. And there certainly is a difference between not prosecuting in the first place and then after the case has been tried and gone to judgment, stipulating a reversal, that doesn't seem to me to be the same thing. Well, it happens actually in, you know, DNA, undiscovered new evidence, et cetera. I mean, it's not unheard of, not unusual. Not unheard of, yeah. Or, or a new rule of law. Go ahead. Okay, so let me, I just want to give you another hypothetical. I think you, you agreed to Judge Wins. I'm just, I'm curious, what, what if Mr. Ames had submitted a declaration saying that he despises African American people and whenever he represents an African American defendant, he attempts to subtly undermine the client's defense to help the government get a conviction? That would be straight on chronic. That's a breakdown in the adversary system. That's a failure to subject the prosecution's case to meaningful adversarial testing. So how is that different from here? There is no such connection. There is no statement. There is no evidence that he represents people any less vigorously because of his personal feelings. Well, isn't also though too, I mean, in the habeas court, like if for things that go on, there are defense counsel that fall on their swords 30 years later and say, I should have done this. I should have done that. And the courts don't accept their, they don't say, oh, well, yeah, you should have just because they hear that. I mean, there still is some determinations that the courts have to decide what they believe, right? Right. Not every statement. I mean, every defense counsel could come in when their clients facing the death penalty and in the execution stage and say, well, I don't think I adequately represented the person and that doesn't go unchallenged. Well, yes. I mean, the statement has to be considered credible for that hypothetical to work. Yes. Here we know from the daughters, we know from house representation, but I think some of the other people he was representing at the same time, it's pretty well known what his feelings were towards, not just them, but because of their race. I mean, it's known that he is a very, very deeply prejudiced person, but the connection from there through inadequately representing them and not doing his job needs to be made. And I don't think it has to be made. Do you have any thoughts? I realize this is probably a place you don't want to go. I'm not sure I should ask you, I'm interested in your opinion. Argue in them. If there were a basis for our court to promulgate, if you will, a new rule on this, how would you think that rule should read? How should it be crafted? What limitations should be in it? I know you don't want one, but if you were advising the court, if you are our lawyer and we were going to craft a rule, what would you suggest be included? Well, given the chronic standards, it has to be something that makes it very, very extremely unlikely that the person could ever get a fair trial. It would have to be beliefs so extreme that he would, as to imply that the person would intentionally not do a good job and dump the case. I don't know how you would infer that in any real case. I mean, I don't. Would you limit it to, for example, in this case, we could cabinet to someone like Ames, for the daughter said, with respect to this particular client, he despised him because he was African-American. He did all these things. So admittedly hearsay, but you got that specific evidence that affected him. Didn't show up in the trial, but there's that. Could the rule be limited in that fashion where it isn't just a general comment, but one that applied to a particular defendant? Oh, I don't know if that really makes a lot of difference. I mean, once you're established that the person has a belief regarding everybody of a particular race, whether he actually expressed that to a third person with regard to the particular client is pretty much random chance. I don't know that that would make a good or work. It would certainly cabin the rule. Well, it would limit the number of cases to which it applies, whether it limits it on a rational basis or not, I don't know. So I'm getting pretty close to the end of my time. So I just would like to say in conclusion, hard cases make bad law. It's a cliche, but it's true. And this is a hard case. And I hope that the court will not make bad law out of it. I don't believe there's any way to fashion a rule that would actually be limited to extreme racism. I think it's a continuum with no clear markers. I ask the court to consider under such a rule, not only the cases that would be granted, but the effect of the litigation of those that won't. The idea that we're going to investigate lawyers' personal lives. We're going to go interview their families and get these kinds of declarations. That would become the rule rather than the exception, as it has with ineffective assistance. And I urge the court to keep this genie in the bottle and not unleash this destructive force. Thank you, counsel. I'll hear a vote. I'll give you three minutes. Thank you, Your Honor. Judge Smith, I would like to address some of the questions you had about EDPA and how it would apply in this case. If the court does accept the premise that the state has waived exhaustion, then there is no state court judgment to defer to. However, if- You're talking about the Teague issue, right? No, this is about 2254- Okay, go ahead. However, if this court does find that the claim was exhausted under the general pro se lenient pleading standards that Mr. Ellis submitted a Sixth Amendment claim based on Mr. Ames' racism and finds that claim exhausted, the superior court decision still is the relevant decision to point to. Because of the look-through. Because of the look-through doctrine. And Wilson v. Sellers, which is cited in the amicus brief, does not change that. Wilson simply says that the yields presumption continues to apply despite Richter. And it's just that, a presumption. And the state has never rebutted that presumption. And in fact, it should be considered law of the case at this point because this case has been before the Ninth Circuit three times now with the superior court judgment being relied on by both parties, the district court and the Ninth Circuit as the relevant state court decision. I would also just briefly like to comment on that this would turn into an exercise of policing thought and speech. And it's not. And the reason for that is because racial animus alters judgment and shapes behavior. And if you don't believe that that happened with Mr. Ames in this case, it at least presents the appearance of that. Which goes back to justice must satisfy the appearance of justice. And our system simply can't handle it being undermined by the appearance that Mr. Ames did not, I'm sorry, Mr. Ellis did not receive a fair trial in this case. And finally, though, it wouldn't be then, so are you asking the rule not to just be that they are racist, but it's the appearance now? No, Your Honor, I'm sorry. I'm just trying to point to two different justifications that the Supreme Court has used to attach structural error. And one of them is circumstances are so unlikely that this attorney could have represented Mr. Ellis effectively. And the other is that does it undermine the integrity of the criminal tribunal? And finally, I would just like to emphasize all we are asking for here is a fair trial for Mr. Ellis. A rule in this case of presumed prejudice does not open the prison cell door and let our client out. But it does, it does. As my colleague Judge Hurwitz pointed out, if we grant what you're talking about, send it back to district court, your opposition's gonna say, hey, let him out, we agree. So where's the opposition? No, Your Honor, he gets a retrial. It's simply- But what's the point of trying it? He already agrees. Just say it's a stipulation. It's done. I'm not sure I- New counsel. New counsel and the people have a chance to retry him. Absolutely. That is the reasonable relief that would be the relief. You'd take the Attorney General out of it then, right? Excuse me? You would take the Attorney General out? Is that what you're suggesting? No, what my point is, and I don't think the Attorney General meant to concede that Mr. Ellis would go free. And I'm sorry if I misunderstood that. But what I understood is that they would not oppose the fact that Mr. Ellis is entitled to habeas relief, which simply means a new trial. Thank you, counsel. Thank you, Your Honor. The case is submitted for decision and will be in recess.
judges: Thomas, Hawkins, Wardlaw, Bybee, Callahan, M. Smith, Jr., Murguia, Nguyen, Watford, Hurwitz, Owens